UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------X
MATTHEW O'LEARY,

        Plaintiff,

    - against –

CITY OF NEW YORK,

        Defendant.

-----------------------------X

**MEMORANDUM AND ORDER**
23 Civ. 5956 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Matthew O'Leary ("O'Leary" or "plaintiff") brings this action against the City of New York (the "City" or "defendant"), alleging that the October 2021 COVID-19 vaccine mandate applicable to all City employees constituted religious discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Free Exercise Clause of the United States Constitution. ECF No. 11 ("First Amended Complaint" or "FAC") ¶¶ 77-172. Presently before the Court is defendant's motion to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 14, 15 ("Mot."), 16.

## BACKGROUND[1]

Plaintiff is a Roman Catholic who holds "a devout belief that the body is a sacred gift from God." FAC ¶¶ 28, 30. As a result, plaintiff "opposes any medical treatment in any way connected to aborted fetal cells." Id. ¶¶ 30-37. He began working for the New York City Department of Investigation (the "DOI") in July 2017 as an investigator in the Law Enforcement Technology, Digital Forensic Unit. Id. ¶ 19.

On October 20, 2021, the New York City Commissioner of Health and Mental Hygiene issued an order mandating that all City employees receive a COVID-19 vaccine (the "Mandate") and requiring employees to show proof of their first vaccine dose by October 29, 2021.[2] FAC ¶¶ 23-27. The next day, the City issued guidance outlining the manner by which an employee could request an exemption from the Mandate. Mot. at 2-3. Any employee whose

---

[1] Unless otherwise noted, the facts considered and recited here for purposes of the instant motion to dismiss are drawn from plaintiff's complaint and are accepted as true, taking all reasonable inferences in plaintiff's favor. See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007); Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995).

[2] On February 6, 2023, before this case was filed, the City announced that, with over 96 percent of City workers and over 80 percent of New Yorkers fully vaccinated against COVID-19, the Mandate would become "optional" for City employees effective February 10, 2023. NYC Office of the Mayor, With Over 96 Percent of City Workers Fully Vaccinated, Mayor Adams Announces COVID-19 Vaccination Will Become Optional for City Workers (Feb. 6, 2023), https://www.nyc.gov/office-of-the-mayor/news/092-23/with-96-percent-city-workers-fully-vaccinated-mayor-adams-covid-19-vaccination#:~:text=Beginning%20February%2010%2C%20the,all%20pending%2reasonable%20accommodation%20appeals. This order permitted former employees terminated for failing to comply with the Mandate to apply for reinstatement.

accommodation request was denied had the right to appeal, and appeals were reviewed by the newly created Reasonable Accommodation Appeals Panel (the "Citywide Panel"). Id.

On October 25, 2021, plaintiff requested a religious exemption from the Mandate, claiming that to "introduce a substance into the body in order to provide protection or immunity . . . interfere[s] with the gift of life . . . and abuse[s] God's gift." FAC, Ex. A ("RA Request") at 6; FAC ¶ 38. Plaintiff also cited the COVID-19 vaccines' "involve[ment]" with "fetal cell lines ...taken from aborted fetal tissue" and wrote that if he were to receive any of the available vaccines, it would "make [him] complicit in an action," i.e., abortion, "that [he is] religiously opposed to." RA Request at 6. On October 29, 2021, two DOI representatives questioned plaintiff about his religious beliefs during a phone call in order to assess his RA Request. FAC ¶¶ 40, 41.

On November 18, 2021, the DOI denied plaintiff's RA Request. Id. ¶ 43; FAC, Ex. B. The denial stated that plaintiff's application failed because it was "not based on a sincerely held religious, moral, or ethical belief." Id. at 1. Plaintiff appealed the denial on November 21, 2021, reiterating his claim of religious objections to the vaccines. FAC, Ex. C (the "Appeal"); FAC ¶ 50. On December 20, 2021, the Citywide Panel denied

-3-

plaintiff's appeal, citing his failure to "[m]eet [c]riteria."
FAC, Ex. D; FAC ¶ 51.  On December 24, 2021, plaintiff was placed
on leave without pay for failing to comply with the Mandate within
three business days of the denial of his appeal.  FAC ¶¶ 61-63.
On February 11, 2022, plaintiff was officially terminated from his
position.  Id. ¶ 64.

On June 17, 2022, plaintiff received a letter from the DOI
offering to reinstate his employment following his February 2022
"terminat[ion] . . . if [he] bec[a]me fully vaccinated" as a
"condition of [his] return to employment with the City."  FAC, Ex.
E (the "Reinstatement Offer"); FAC ¶ 65.  The Reinstatement Offer
required the submission of proof of a first vaccination dose by
June 30, 2022 and a second dose by August 15, 2022, and did not
explicitly reference the City's exemption procedure.  See
Reinstatement Offer.  Plaintiff alleges that he did not accept the
Reinstatement Offer based on his religious beliefs.[3]  FAC ¶ 74.

Plaintiff contends that on December 22, 2022, he "contacted
the [Equal Employment Opportunity Commission (or "EEOC")] . . . in
order to file a Charge of Discrimination" against defendant and
the DOI.  Id. ¶ 75.  On January 26, 2023, plaintiff filed the
charge, ECF No. 16-1 (the "EEOC Charge"), and amended the Charge

---

[3] Plaintiff does not allege that he inquired into whether he had the option of
submitting a new religious accommodation application.  See FAC ¶¶ 65-74.

on February 28, 2023, FAC ¶ 15.  On June 1, 2023, the EEOC issued plaintiff a notice of right to sue.  Id. ¶ 16.

Plaintiff commenced this action against the City and the DOI on July 11, 2023, ECF No. 1, and amended his complaint on December 11, 2023, ECF No. 11, dropping the DOI as a defendant.  Plaintiff asserts two causes of action under Title VII of the Civil Rights Act of 1964: one for wrongful termination and the second for failure to accommodate, FAC ¶¶ 77-130, and a single cause of action under 42 U.S.C. §1983 for the violation of the Free Exercise Clause of the First Amendment of the United States Constitution, id. ¶¶ 131-72.  On January 5, 2024, defendant filed its motion to dismiss the First Amended Complaint.  ECF Nos. 14-16.  On January 19, 2024, plaintiff filed his opposition, ECF No. 17 ("Opp."), and on January 26, 2024, defendant filed its reply, ECF No. 18 ("Reply").

## LEGAL STANDARD

To withstand a Rule 12(b)(6) motion, the non-movant's pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  While the Court accepts

the truth of the allegations as pled, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice and we are not bound to accept as true a legal conclusion couched as a factual allegation." Brown v. Daikin Am., Inc., 756 F.3d 219, 225 (2d Cir. 2014) (citations and internal quotation marks omitted).

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), a district court may consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

## DISCUSSION

Defendant argues that the First Amended Complaint should be dismissed because plaintiff: (1) failed to exhaust his administrative remedies under Title VII; (2) fails to state claims for religious discrimination and for failure to accommodate under Title VII; and (3) fails to plead facts sufficient to establish that the Mandate violated the free exercise of plaintiff's religion.  For the following reasons, the Court grants defendant's motion to dismiss.

### A.    Title VII Claims

Plaintiff brings two Title VII claims titled "Termination" and "Failure to Accommodate."  The threshold issue is whether, as

-6-

defendant argues, plaintiff has failed to timely exhaust administrative remedies for his Title VII claims because he filed the EEOC Charge more than 300 days after the alleged unlawful employment practices.

### 1. Failure to Exhaust Administrative Remedies

Before a party can bring a Title VII suit in federal court, that party must "exhaust administrative remedies," Fowlkes v. Ironworkers Local 40, 790 F.3d 378, 384 (2d Cir. 2015), by first presenting the claims forming the basis of their suit in a complaint, or "charge," to the EEOC, Williams v. New York City Hous. Auth., 458 F.3d 67, 69-70 (2d Cir. 2006); 42 U.S.C. § 2000e-5(e). The plaintiff "must make the EEOC filing within 300 days of the alleged discriminatory conduct and, before bringing suit, must receive a 'Notice of Right to Sue' letter from the EEOC." Id. at 69 (citation omitted). "Exhaustion of administrative remedies through the EEOC is 'an essential element' of the Title VII . . . statutory scheme[] and, as such, a precondition to bringing such claims in federal court." Legnani v. Alitalia Linee Aeree Italiane, S.P.A, 274 F.3d 683, 686 (2d Cir. 2001) (citation omitted). "The purpose of this exhaustion requirement is to give the administrative agency the opportunity to investigate, mediate, and take remedial action." Fowlkes, 790 F.3d at 384 (internal quotation marks and citation omitted).

Because administrative exhaustion under Title VII is not a jurisdictional requirement, but rather a "precondition to bringing [Title VII] claims in federal court," it is subject to equitable defenses.  Id.   However, these defenses should be applied "sparingly."  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).   In this case, plaintiff attempts to rely on the equitable defense of a continuing violation, which allows a court to hear an otherwise time barred claim if the plaintiff has experienced a "continuous practice and policy of discrimination." Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001); see also Lambert v. Genesee Hospital, 10 F.3d 46, 53 (2d Cir. 1993) ("Under the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone.").  However, "discrete discriminatory acts," such as "termination, failure to promote, denial of transfer, or refusal to hire," "are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  Nat'l R.R. Passenger Corp., 536 U.S. at 113-14; see also McGuirk v. Swiss Re Fin. Servs., Corp., No. 14 Civ. 9516 (CM), 2016 WL 10683305, at *9 (S.D.N.Y. June 17, 2016), aff'd, 699 F.

App'x 55 (2d Cir. 2017) (noting that "disparate pay, denials of accommodation and performance evaluations[] are not considered to be 'continuing violations,' even if a plaintiff has experienced more than one of them over a period of time"). "[O]nly incidents that took place within the timely filing period are actionable." Nat'l R.R. Passenger Corp., 536 U.S. at 114.

Here, plaintiff's Title VII claims are premised on the following acts of allegedly discriminatory conduct: (1) the DOI's denial of plaintiff's RA Request on November 18, 2021; (2) the Citywide Panel's denial of plaintiff's Appeal on December 20, 2021; (3) plaintiff's termination on February 11, 2022; and (4) the City's offer to reinstate plaintiff on June 17, 2022. FAC ¶¶ 43, 50, 51, 64, 65. Each of these events clearly constitutes a "discrete discriminatory event." Nat'l R.R. Passenger Corp., 536 U.S. at 113-14. Therefore, because plaintiff filed the EEOC Charge on January 26, 2023, 434 days after the denial of his RA Request, 402 days after the denial of his Appeal, and 349 days after his termination, ECF No. 16-1, plaintiff failed to timely file a charge with the EEOC with respect to these three acts.

However, plaintiff attempts to avoid this result by claiming that the Reinstatement Offer, dated June 17, 2022, was another act of discrimination which falls under the continuing violation exception, such that all of the allegedly discriminatory acts

should be considered timely.  Opp. at 15-19.  Putting aside for the moment plaintiff's contention that an offer of reinstatement following a termination would constitute an act of discrimination, it is clear that this too is a discrete act that starts "a new clock for filing charges." McGuirk, 2016 WL 10683305, at *9; Nat'l R.R. Passenger Corp., 536 U.S. at 113-15.  To support his position, plaintiff cites only New York state authority, despite acknowledging, as he must, that "[New York State] law is not controlling in connection with [p]laintiff's Title VII claims[.]"[4] Opp. at 19.  Thus, we will not engage in a dialogue about irrelevant state authorities addressing inapposite claims.

Accordingly, as plaintiff failed to timely file EEOC charges with respect to his first three claimed acts of discrimination, each of which is a discrete act, and since the offer of reinstatement is likewise a discrete act not within the continuing violation exception, plaintiff's Title VII claims premised on his RA Request, the denial of his Appeal, and his termination are dismissed.

---

[4] Plaintiff relies heavily on Garvey v. City of New York, 180 N.Y.S.3d 476 (Sup. Ct. 2022) in an attempt to argue that the continuing violation exception should apply because the Reinstatement Offer demonstrates that the DOI did not reach a final and binding position until the day that offer expired, or June 30, 2022. Opp. at 20-21.  However, Garvey is a New York state court case that did not involve a Title VII claim and thus is neither binding nor relevant.

**2. Title VII Claims**

We now turn to the Reinstatement Offer claim on the merits. Title VII prohibits employers from discriminating against employees on the basis of religion.  See 42 U.S.C. § 2000e-2(a)(1). Under the statute, an employer must "reasonably accommodate" an employee's "religious observance or practice," unless doing so would impose "undue hardship on the conduct of the employer's business."  Id. § 2000e(j).

"To defeat a motion to dismiss . . . in a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision."  Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87 (2d Cir. 2015).  To state a claim for religious discrimination based on a failure to accommodate, a plaintiff must allege that "(1) [he] held a bona fide religious belief conflicting with an employment requirement; (2) [he] informed [his] employer[] of this belief; and (3) [he was] disciplined for failure to comply with the conflicting employment requirement."  Baker v. The Home Depot, 445 F.3d 541, 546 (2d Cir. 2006) (citation omitted).

The core of plaintiff's surviving Title VII claim is that the City, no longer his employer, violated Title VII by offering to

reinstate plaintiff's employment without explicitly granting him a third opportunity to apply for a religious accommodation. FAC ¶¶ 108-130; Opp. at 22-23. It is difficult for the Court to comprehend plaintiff's proposition that such a letter constitutes a "materially adverse change in the terms and conditions of employment," as is required in a Title VII failure to accommodate claim. Sanders v. N.Y.C. Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004) (internal quotation marks and citation omitted). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Vega, 801 F.3d at 85 (citation omitted). A letter offering a formally terminated employee the opportunity to return to a previously held position does not fall into any of these categories, and plaintiff offers no reason to find otherwise.

Plaintiff's claim also fails as he has not alleged that he timely sought an accommodation in connection with the Reinstatement Offer. Despite having failed to respond to the letter in any way, plaintiff contends that the DOI and the City were "on notice of [his conflicting] religious beliefs . . . at the time that the Reinstatement Offer was extended" based on his

October 2021 RA Request.[5]  FAC ¶ 103.  However, that twice rejected request is time-barred and thus cannot form the basis of his failure to accommodate claim.  See Equal Opportunity Emp. Comm'n v. United Health Programs of Am., Inc., 213 F. Supp. 3d 377, 422-23 (E.D.N.Y. 2016) (dismissing failure to accommodate claim under Title VII as time-barred because the meeting in which the plaintiff alleged she requested an accommodation occurred over 300 days before she filed charges with the EEOC).  Accordingly, all plaintiff's Title VII claims are dismissed.

**B.   Free Exercise Challenge**

Plaintiff's Free Exercise challenge is also unavailing. Significantly, plaintiff does not bring a facial challenge to the Mandate, but instead claims that the Mandate as applied violates his rights.  FAC ¶¶ 131-72.  This approach is understandable, given the Second Circuit's binding decision in Kane v. De Blasio, 19 F.4th 152, 163-64 (2d Cir. 2021).  As background, we reiterate our description of the Free Exercise Clause from our opinion in Kane on remand.[6]

---

[5] The Court notes that nearly seven months prior to the date of the Reinstatement Offer, the Second Circuit had deemed the Mandate neutral and generally applicable and thus subject to rational basis review, as discussed infra 15-16.

[6] This Court was not the original district judge on the Kane case, but was reassigned to it following a discretionary recusal.

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . ." U.S. CONST., amend. I; see Cantwell v. Connecticut, 310 U.S. 296, 303 (1940) (incorporating the Free Exercise Clause against the states) . . . "The Free Exercise Clause thus protects an individual's private right to religious belief, as well as 'the performance of (or abstention from) physical acts that constitute the free exercise of religion.'" Kane, 19 F.4th [152, 163-64 (2d Cir. 2021)] (quoting Cent. Rabbinical Cong. of U.S. & Can. v. N.Y.C. Dep't of Health & Mental Hygiene, 763 F.3d 183, 193 (2d Cir. 2014)). "In order to prevail on a Free Exercise Clause claim, a plaintiff generally must establish that 'the object of [the challenged] law is to infringe upon or restrict practices because of their religious motivation,' or that its 'purpose . . . is the suppression of religion or religious conduct.'" Okwedy v. Molinari, 69 Fed. App'x. 482, 484 (2d Cir. 2003) (alterations in original) (citing Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 533 (1993)).

Importantly, the protection of the Free Exercise Clause "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability." [Employment Div., Dep't of Human Resources of Oregon v. Smith, 494 U.S. 872, 879 (1990)]. "Where the government seeks to enforce a law that is neutral and of general applicability . . . it need only demonstrate a rational basis for its enforcement, even if enforcement of the law incidentally burdens religious practices." Fifth Ave. Presbyterian Church v. City of New York, 293 F.3d 570, 574 (2d Cir. 2002); see also Cent. Rabbinical Cong., 763 F.3d at 193 . . . [L]aws and government policies that are either non-neutral or not generally applicable are subject to "strict scrutiny," meaning that they must be "narrowly tailored" to serve a "compelling" state interest. Roman Cath. Diocese of Brooklyn v. Cuomo, 592 U.S. 14, 18 (2020); see Fulton v. City of Philadelphia, 593 U.S. 522, 541 (2021) ("A government policy can survive strict scrutiny under only if it advances interests of the highest order and is

-14-

narrowly    tailored    to    achieve    those    interests.")
(internal quotation marks and citation omitted).

Kane v. De Blasio, 623 F. Supp. 3d 339, 353-54 (S.D.N.Y. 2022)
(appeal pending).   In Kane, the Second Circuit decided that a
vaccine mandate parallel to the Mandate at issue here was neutral
on its face because it applied to "all [Department of Education
("DOE")] staff, as well as City employees and contractors" who
work in DOE schools and buildings and thus did not "single out
employees who decline vaccination on religious grounds."  19 F.4th
at 164 (internal quotation marks omitted).  The Circuit also held
that the Mandate was generally applicable because it "applie[d] to
an entire class of people."   Id. at 166 (emphasis in original).
Having  concluded  that  the  Mandate  was  neutral  and  generally
applicable,   the   Circuit   found   that   the   Mandate   "plainly
satisfie[d]" rational basis review as a "reasonable exercise of
the State's power to act to protect the public health."   Id.

        However, as this Court previously explained on remand,

        [I]n accordance [with] the City's concession that the
        procedure used in examining the religious exemption
        requests [by DOE staff] may have been "constitutionally
        suspect" as applied to plaintiffs, the Second Circuit
        made  the  "exceedingly  narrow"  determination  that  the
        plaintiffs were likely to succeed on their as applied
        challenges.

_Kane_, 623 F. Supp. 3d at 351 (quoting _Kane_, 19 F.4th at 167–68). Specifically, the Circuit held that the DOE's denial of an individual's religious accommodation request "based on someone else's publicly expressed religious views — even the leader of her faith — runs afoul of the Supreme Court's teaching that '[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds.'" _Id._ at 168 (quoting _Hernandez v. Commissioner_, 490 U.S. 680, 699 (1989)).

> Accordingly, the Second Circuit ordered that plaintiffs' requests receive fresh consideration "by a central citywide panel, which will adhere to the standards of, _inter alia_, Title VII of the Civil Rights Act of 1964, rather than the challenged criteria set forth in . . . the arbitration award . . ." (hereinafter, the "Citywide Panel").[7]

_Kane_, 623 F.Supp. 3d at 351.

### 1. Neutrality

Given the binding authority of _Kane_, plaintiff limits his challenge to a claim that the Mandate was not neutral as applied to him.  Plaintiff's reliance on _Kane_ in this regard is misplaced, as the facts alleged in the First Amended Complaint are readily distinguishable.

---

[7] The Citywide Panel that the Circuit in _Kane_ directed rehear the claims for exemption is the same entity that ruled on plaintiff O'Leary's RA Request.

In contrast to the "exceedingly narrow" set of facts in Kane, 19 F.4th at 167, plaintiff fails to allege that his religious beliefs "were . . . evaluated for their objective validity by comparison to those of other members of h[is] faith," Chinchilla v. New York City Police Dep't, No. 23 Civ. 8986 (DEH), 2024 WL 3400526, at *4 (S.D.N.Y. July 12, 2024); see also Collins v. City Univ. of New York, No. 21 Civ. 9544 (NRB), 2023 WL 1818547, at *9 n.7 (S.D.N.Y. Feb. 8, 2023) (drawing a distinction with Kane because "the sincerity of [the plaintiff's] religious beliefs was not evaluated against someone else's publicly expressed religious views").  Instead, the allegations demonstrate that the DOI assessed plaintiff's RA Request based on his own religious views, without any reference to the beliefs of others, in an attempt "to determine the sincerity of [his] religious beliefs" -- a perfectly permissible inquiry for an employer to make.  See Chinchilla, 2024 WL 3400526, at *4; infra 20-21.

For instance, notes from plaintiff's discussion with DOI reflect that plaintiff was asked ten varied questions about his religious beliefs, his objections to the Mandate, the history of his participation in organized religion, and whether plaintiff consumes medication either developed in the same way as the COVID-19 vaccines or otherwise.  FAC, Ex. C at 3-6.  None of the DOI's questions, which were otherwise relevant, remotely indicate that

the denial of plaintiff's RA Request was motivated by the religious beliefs of another individual or religious leader.  Ultimately, plaintiff's application was denied based on the DOI's determination that it was "not based on a sincerely held religious, moral, or ethical belief."  FAC, Ex. B at 1.  Any suggestion by plaintiff that the Citywide Panel rejected his claim because he did not produce "an authoritative document[] from a religious organization" presupposes a level of studied ignorance or defiance to Kane's teachings.  Opp. at 13; FAC ¶¶ 44, 49, 57.  We decline to go down such a speculative and unreasonable path.

More fundamentally, plaintiff at most offers conclusory statements regarding defendant's discriminatory motivation.  See, e.g., FAC ¶ 150 ("NYC/DOI acted with hostility towards [p]laintiff's religious beliefs and passed judgment upon, or presupposed the illegitimacy of, [p]laintiff's religious beliefs and practices when NYC/DOI arbitrarily concluded that [p]laintiff failed to demonstrate entitlement to an exemption from compliance with the Vax Mandate.").  However, on a motion to dismiss, a plaintiff must offer more than "bare assertions," Iqbal, 556 U.S. at 681, and "conclusory allegations," Sacerdote v. N.Y. Univ., 9 F.4th 95, 107 (2d Cir. 2021); accord Bonilla v. City of New York, No. 22 Civ. 7113 (AT), 2023 WL 8372859, at *5 ("Although Bonilla alleges that hostility toward her religious beliefs was the real

reason for the denial [of her religious accommodation], these bald assertions are insufficient to state a claim.").  Accordingly, plaintiff fails to allege that the Mandate was not applied neutrally.

### 2. General Applicability

Again relying on Kane, 19 F.4th at 168-69, plaintiff attempts to argue that the Mandate was not applied consistently.  Opp. at 13.  Specifically, plaintiff contends that the Mandate is not generally applicable as applied because the Citywide Panel "had substantial discretion" and engaged in an "individualized accommodation and exemption process."  Id.  He points to the Citywide Panel's determination that his co-worker, who "[u]pon information and belief, . . . held similar beliefs as [p]laintiff," met the criteria for an exemption.  FAC ¶¶ 52-60; Opp. at 13-14. Likening this limited allegation predicated only on information and belief to the Second Circuit's finding in Kane that the arbitrators inconsistently adhered to the DOE's objective procedure, plaintiff argues that the review process was not generally applicable and thus subject to strict scrutiny.  Opp. at 12-13.

Here, too, plaintiff's argument is speculative and without basis.  Plaintiff simply alleges that the DOI and the City engaged in a process that inquired into the sincerity of an applicant's

religious beliefs, which, as we noted above, is a permissible inquiry.  See Kane v. De Blasio, 575 F. Supp. 3d 435, 442 (S.D.N.Y. 2021); see supra 17.    The "mere existence of an exemption procedure, absent any showing that secularly motivated conduct could be impermissibly favored over religiously motivated conduct, is not enough to render a law not generally applicable[.]"    We The Patriots USA, Inc. v. Hochul, 17 F.4th 266, 288-89 (2d Cir. Nov. 4, 2021) (internal quotation marks and citation omitted)). To find otherwise would "create a perverse incentive for government entities to provide no religious exemption process in order to avoid strict scrutiny."  Collins, 2023 WL 1818547, at *8 (quoting Ferrelli v. Unified Ct. Sys., No. 22 Civ. 0068 (LEK) (CFH), 2022 WL 673863, at *8 (N.D.N.Y. Mar. 7, 2022)).

Moreover, an exemption process "may legitimately include questions about the use of other medications derived from fetal cell lines without running afoul of the First Amendment." Chinchilla, 2024 WL 3400526, at *4; see also Bonilla, 2023 WL 8372859, at *5.  An employer can also inquire into whether other examples of the employee's acts outside the COVID-19 context align with their religious beliefs.  Kane, 575 F. Supp. 3d at 442.

The Court thus concludes that the plaintiff's as applied challenge is unsupported.  Accordingly, his Free Exercise Claim is

subject to rational basis review, which is plainly met here.  <u>See</u>
<u>We The Patriots</u>, 17 F.4th at 290.

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss
is granted and the case is dismissed.  The Clerk of the Court is
respectfully directed to close the motions pending at ECF No. 15.


**SO ORDERED.**


Dated:   September 12, 2024
         New York, New York

                                    _____
                                    NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE